The first matter today is 19-9601, Olivas-Melendez v. Barr. That's not a good start. We are ready for you, Mr. Tarrin, whenever you are ready. Good morning. Thank you, Your Honor. May it please the Court, Aaron Tarrin with the Immigrant Defenders Law Group on behalf of Mr. Olivas-Melendez. Thank you. Given the limited time that we've got, I do want to dispose with an issue out of the gate so we don't spend time on it, and that's the issue of whether or not the notice to a peer-vested jurisdiction with the immigration judge. As cited by the government in their brief, it does appear that intervening case law from the Tenth Circuit does preclude that argument, so I just wanted to dispose of that. I assume you're just erasing it for purposes in case you decide to apply for certiorari. That's correct. That's correct, Your Honor. That's fine. Okay. So I'll get right into what I think goes to the heart of the issues here, and that's as to why did it take Mr. Olivas so long, 20 years, to file this motion to reopen. And as you look back over the 20 years, there's actually several candidates, timeframes that are good candidates as to when this may or may not have been appropriate. But when we start to look at it, it's actually quite a mess, and I want to just give a brief overview of that because I think that's going to be critical as to the equitable tolling issues in this case. It's also going to be critical when we try to understand whether or not this was a fundamental change in the law. It really started off back in 2013 with Moncrieff, right, as we're straining, trying to figure out what in the world to do with the modified categorical approach. When can we go from step one to step two? And through 2013, we've got and you can see the Supreme Court really straining with the circuit courts and all the other courts below them trying to clarify this issue. And as somebody who kind of grew up during this saga, it was interesting to see how it was almost like the Supreme Court came out and said it, and then they said it again, and then they would say, and we really mean it this time. And every time they would announce something new, the circuit courts would scramble, and then months or years later, the BIA would end up scrambling. In this case, it really started in 2013, kind of culminated in 2015 and 16, and really with Mathis, the Supreme Court finally came out and really hit the sledgehammer and kind of hit the nail on the head as it pertains to this Council. Let me ask you this question. And where you're taking us, what is your, what is your theory of our standard of review that we would apply in this case then? Well, I think the standards is set forth in the brief. I mean, it's a don't, it's a don't over review, Your Honor. I mean, these are legal questions, really. There is a different standard equitable tolling has got to be based upon what has gone before in your timeliness in that. So what did the district court do? Or what did they do in regards to this, and the standard of review that they apply? Well, the standard of review that the Board of Immigration Appeals applies is also a de novo review from the immigration judge. And so the facts here really are surrounded dates. So we've got the filing dates, and we've got the dates that the decisions, the precedent decisions that control the case law. So those, I mean, really, there's not a lot of facts here. The facts are really when he filed the motion to reopen and when all of these cases came out. But those facts, Council, those facts are important, though, in our decision of how we're going to rule in this matter. Certainly, Your Honor. And as the Board of Immigration Appeals, they kind of even hinted and conceded that really, we're not looking to show that Mr. Olivas demonstrated diligence throughout the entire 20 years that his case was closed. Really, what we're really focusing on, and I would submit, is in 2017 with the last this is not the Chires case, the saga was not one, not two, not three, not four, but there were six published decisions by the Board of Immigration Appeals, where they strained and really resisted to a large extent, applying and recognizing the holding that really went back all the way to really fundamentally a change in the way that Circuit Courts and the Board of Immigration Appeals viewed the, or applied the modified categorical approach. And that fundamental change focused around the difference, distinguishing between the means and the 2017 is the point at which we're looking. You have 90 days to file a motion to reopen, and it's still a year and a half after that date. That's a great question, Your Honor. And when Mr. Melendez came to me, the reason he came to me is because I litigated Chires. And by the end of the sixth case, I recall thinking, I didn't even know if this was the end of it. The Circuit Courts were still a mess. The BIA was still unclear. I didn't know, nobody really knew what was going to come of this. And so the question arises as counsel, I mean, you've got to think about this in terms of reasonableness. And here's an attorney talking who understands these issues well, and has been litigating and following this from day one. We weren't sure whether or not the Board had issued a final interpretation on this. And so- Do you have to have absolute certainty, or do you just have enough to put someone on notice that they might have a valid argument? I mean, do you have to have a Supreme Court decision on the way it plays out? Although in 2013, Moncrieff came out and the Supreme Court into comp essentially said, this is what we mean, gosh darn it. The reality in practice is that the Board of Immigration Appeals doesn't apply those decisions until they've got a case directly on point. And they will resist and argue that until and unless there's a case directly on point to your statute, they really don't apply those. And so here again, 2017, in the last Chires case, where they really struck not the exact statute, but a statute that was very, very close, and that the issue really, really was narrowed. They really narrowed it down. So here we are, after six Chires cases, after Moncrieff, after Decomp, after Mathis, and where Mathis actually in a hypothetical set forth the exact situation that rendered Mr. Olivas's removable offense no longer removable. Counsel, are you saying that since you didn't have a ruling, you chose to do nothing in a year and a half as far as going to court? No, actually, Mr. Olivas came to me. We filed about three months after he came to me. He found out that summer, he'd heard from some friends that, hey, go talk to this lawyer. There's apparently some changes in the law. And so he came as soon as he heard that and came and talked to me. The delay to file was actually our firm's decision, because we wanted to get a better feel that we had a few more cases at the local immigration judge court. So we wanted to get a feel of where this was going, because again... Is what you're telling us, is it in the record, Counsel? No, it isn't. No, it is not, Your Honor. And I'm speaking more to provide the court with some context. And it would have to... It's not in the record. We don't need context, Counsel. And the context I'm providing is just the back and forth from the Board of Immigration Appeals, where they actually repealed their own decision. And they... I mean, it's clear from the briefing we cite to the cases there. It's clear that this was an absolute mess. Thankfully, today, it's clear. But I guess the point I want to drive home is that it would be unreasonable for us to hold Mr. Olivas to a higher standard in terms of diligence than most attorneys at the time would even be able to adhere to. It's really difficult for a non-citizen to understand that they were illegally deported and follow the case law closely, especially when the case is in dispute all the way from the Supreme Court to the circuits, and especially down to the Board of Immigration Appeals. And this is all reserved. Excuse me. When you say he was illegally deported, what are you getting at? Well, the reality is that he, at the time... The reality was that he was legally deported. Well, at the time that he was deported, it under... Well, and I would kind of disagree. I would think the Supreme Court would say even at the time he was deported, it was against the categorical approach as they understood it then. But clearly, the circuit board... 20 years ago, counsel, let me make sure I'm understood. 20 years ago when he was deported, you're saying that was illegal? You know, given... That's an easy enough question to answer, yes or no. According to BIA case law, no, but arguably under Supreme Court precedent, arguably it was a misapplication of the law. What we know is that today with the clarifications and the substantial shift in how the modified categorical approach is applied, we know that today he's no longer removable. And I think that even the government will consider it. I agree. Oh, sorry. Before you run out of time, I'd like you to address the second issue, which is Mr. Olivas' argument that we should review the agency's refusal to sua sponte reopen. And I want to clarify, you are asking us to reverse another panel's decision in Reyes-Vargas that says we don't have jurisdiction over this? No, Your Honor. I litigated that case as well, and I wouldn't like it to get reversed. What we would like is for the court to read essentially a distinction that Reyes-Vargas said, that what could be and should be reviewable are purely questions of law, right? Not how the facts may apply, but questions of law. For example, the government argues that the agency should have unfettered discretion under its sua sponte authority because there are no standards, because it's completely wide open. And that just simply isn't true. There are articulated standards that the board uses. And in fact, there are parallel standards that apply in equitable tolling. In fact, they're two different tracks. But as I understand your argument, what you're arguing is that the board misapplied those standards. That they didn't define those standards properly. For example, when they talk about what an exceptional circumstance is or a gross miscarriage of justice, a fundamental change in law, these are legal terms that circuit courts can and should inform agency decisions on. Now, how the agency applies the facts to those legal technical terms, that's where I think that they should have broad discretion and it would be difficult for the circuit to provide review. But when it comes to purely legal issues, I think that yes, that the board should not be given unfettered discretion to interpret those. I see I've got a minute and a half left, and I'll go ahead and reserve the remainder. Thank you. Mr. Hurley, we're ready for you whenever you are ready. May it please the court, James Hurley for the Attorney General. This court should dismiss in part and deny in part the petition for review. First, it should deny the petition because Mr. Olivas' motion was untimely and he failed to show that he should be excused from the 90-day time limit for motions to reopen. There's no question that his motion to reopen was filed late. In this case, at first, the immigration judge said it was 20 years late. But then when you look at what the board said, the board said, well, even considering his argument, if you date it from April 2017, he still took a year and a half. And do you agree that's the point to look at is April of 2017? It is. And I think the discussion of the summertime, that's not in the record, but I think it's in the opening brief where he mentions the summer of 2018. So it's still, it's not even 2017. So the agency didn't abuse its discretion in finding that his motion was untimely and he hadn't established diligence in filing his motion to reopen because it had been a year and a half since the mark that he set of April 2017. And my second point is that this age, this court should dismiss the petition with respect to the court's or the board's exercise of its sua sponte authority. The court doesn't have jurisdiction to review the agency's discretionary determination that Mr. Olivas didn't present an exceptional circumstance or a fundamental change in the law. And let me ask you this. The argument is that we're dealing with a pure issue of law, not an area where the board has discretion. And so therefore we do have jurisdiction to review whether the board properly applied the law. How do you respond to that? Well, again, this is a motion to reopen and the standard review is abuse of discretion for the whole, for the board's decision that we're reviewing. So in this case, if you look at the Ray's Vargas decision, what they found was that the board, the reason why they reversed or they sent it back was because it found that the board didn't exercise its discretion. I guess the board in that decision, it was something to do with the post departure bar. So the agency didn't even act. And in this case, the board, the immigration judge and the board, they totally, they examined his motion to reopen. They got to the merit and they did a weighing whether or not he had established whether or not it merited sua sponte reopening. And they found that it had been, it was not a law over the 20 year period since he was removed in 1994, I mean, 1998. So we argue that this court doesn't have jurisdiction to review that because unlike the Ray's Vargas case, the agency actually examined his claim and they got to the merits and they, in their exercise of discretion, they found that he hadn't established a fundamental change in the law that would necessitate a sua sponte reopening. Council, let me ask you this question. What's your position if we do think that we do have jurisdiction? Well, I can't speak to what the board would say in this case. Again, there have been massive, there have been the laws evolved. And as opposing counsel said that these decisions that have come down starting in 2013, they've, they've been changed. They've clarified what the categorical and modified categorical approach are. And that's, and that's what the immigration judge said in this case that, you know, it's been 20 years, he was removed in 1998. So it's over the course of 20 years, these cases have, their interpretation has changed over time. But if you look at the actual Mathis decision too, Justice Kagan talked about how if you go back, you know, to the 1990s case, it's always there. It's always been discussing the elements when you're looking at these criminal statutes. So it's just been clarified over the past 20 years. It hasn't been a fundamental change. And this is something that the, both the immigration judge and the board, they determined that it wasn't a fundamental change. Did you win or lose if we determined it was a fundamental change? I think that it's just what you can look at. I think that in this case, it was a discretionary determination by the board that it wasn't you have to look at what the board did and they exercise their jurisdiction. So again, this, the case law here is that this court doesn't have jurisdiction to look at that review in the, of the agency. And they just determined as a discretionary point that they hadn't established. And I think as we started in our brief, the Lona case from the, from the opposition in this case, where in that case, it found that the board, it didn't have jurisdiction to review the board's denial of sui sponte reopening, because in that case, the board didn't advance a misunderstanding of its discretion. And it just determined that there was no extraordinary circumstances or fundamental change in the law. So that was a discretionary determination that the agency made that is beyond this court's jurisdiction. Yeah, would you restate the nine? So I may have missed, I'm not sure what you said. As to the case, it's the Lona versus bar case. Spell it, please. It's l o n a. 958. After 1225. So if you if you look at that case, it determined that kind of like, similar to the, the race Vargas in this, and this from this court where it was examining the the agency's denial of sui sponte reopening, it said that the court, it didn't, they exercise their their discretionary determination that the agency didn't say that, you know, we couldn't look at it, they actually looked at the merits of the of the motion, and it determined that as a discretionary point that it didn't establish a fundamental fundamental change in the law. So the Ninth Circuit in that case said that it didn't have jurisdiction. And we would to repeat for the for the race Vargas case, this isn't a case where the the board and immigration judge didn't act, they did act and they did exercise their jurisdiction. And they just determined that it was not a a fundamental change in the law that would excuse the the untimely filing of the motion reopen. So again, I'd just like to reiterate that the sui sponte reopening is something that the agency should use sparingly. And it's not something to correct, or, you know, get around the time limits for motions to reopen. So in this case, the the immigrant, the both immigrant immigration judge and the board determined that he hadn't established the the fundamental change in the law that would excuse the untimely motion reopen, or establish or necessitate sui sponte reopening. Council, can I just ask you then, are you asking us to defer to that determination that it wasn't a fundamental change in the law or it is or the fact that they did take a position that per se means we can't review it. There's the second option that, again, this is a it's sui sponte reopening. And in this case, the both the immigration and the judge, they weighed his motion reopen and and as a discretionary determination, they found that he hadn't established a fundamental change in the law that would would, you know, necessitate sui sponte reopening. So we would say that this court lacks the jurisdiction to review that because line you're drawing from Reyes-Fargus is that as long as there is an action in a determination, it's unreviewable. Correct. I think in in that case, it had to do with the departure bar. And I think when they filed the motion reopen, the agency said, Oh, no jurisdiction, we're not going to act. But in this case, the the the immigration judge and the board just said, or looked at the considered the entirety and they just determined that he hadn't established a fundamental change of law since 1998. And it noted that there were changes, but it said that the it was incremental, and it relied on the board precedent of matter of GED, where it said that it's got to be exceptional. And in that case, they recognize that there could be would not constitute a fundamental change. So and we would argue that this court doesn't have jurisdiction to review that because they didn't make they didn't make the same mistake. And in this, they didn't make a mistake in this case, like they did in the Reyes-Fargus case. But I by saying that that still raises the question. So we're not looking at whether I mean, as long as they make a determination, it doesn't matter what they said. I mean, you're going on about, oh, well, they said it was incremental and da da da. But I guess your point is, isn't I guess I'm trying to figure it out. But as long as they made a determination, they exercise their discretion. It's not reviewable, no matter what the ground was, or maybe, is there a case where they exercise their discretion, and they say it's incremental, but it's fundamental. Right. And so I mean, I'm just trying to figure out what our role is, or what you think our role is. We would we would say that it was a this court, it's a longstanding policy is that you don't have jurisdiction to review sua sponte reopening. So that is has changed recently. And I think the Reyes-Fargus case is an example of that. And I think the case was that this court found that well, that the this was based on the immigration, the agency didn't even exercise their discretion, they said, there was a motion to reopen, and they didn't even get to the merits. And that's what was said in the Reyes-Fargus case. But in this case, there was an untimely motion to reopen, they considered the merits of the case, and they did the weighing, and they determined that it wasn't a fundamental change in law that would excuse the or the time the untimely motion and necessitate sua sponte reopening. So much. Mr. Hurley, is the determination whether it's fundamental or incremental, a question of law, or a question of fact? That would, it would be, I'm not sure exactly if I could pin it down, because I think it would be, of course, you're looking at the law, because you're looking at what the cases stay and you're looking at statutes, and you do that evaluation, too. But it's also a question of fact in that, you know, at one time, the law was interpreted a certain way. So you would kind of compare, you take a snapshot of what how the law was interpreted at one point, and then you look at it later on. And then you you'd, you'd compare it to how it was later on. So it's kind of it's kind of a both. It's not strictly just a question of law. I think you would look at how the board and the courts looked at certain issues back before and then you compare that to now. So you just look to see if it was changed. And that's what and that's what the agency did. They kind And then they compared it to now and they said, well, this it's, there have been incremental changes over the past 20 years since it was removed. Let me let me follow up with one other question. Is the answer to my first question, whether it's a question of law, question of fact, determinative of whether we have jurisdiction, which I think is what Judge I was getting at. That I would agree, because again, this goes to the sua sponte. I think the the when it when they filed the motion to reopen that the the board exercise its discretion and it considered everything that the facts of the case, the law, and this goes to the whole reason why there's no sua sponte jurisdiction, because it's hard to evaluate all those things. And I think in this case, it boils down to the discretionary determination. And I think it's a sua sponte reopening and unlike the race Vargas versus bar case where the agency didn't even act. They did, and they made the consideration here and their, their determination in this case is beyond this court's jurisdiction. And my last point was that, but I guess it's been conceded about the in 1998. That issue is is foreclosed by this court's decision and Lopez Muniz versus bar, where this court held that the court or the immigration courts did have jurisdiction, even if the charging document lacked a time and date for the first hearing. Thank you. Thank you. And I believe, Mr. Karen, that you have some rebuttal time. You have a to read what the race this court decided in raise Vargas as and as, as it pertains to whether or not they have jurisdiction. And this is on page, let's see. I believe it's page 1300. I'm looking here on Westlaw. It says when presented with a board decision rejecting a motion for sua sponte reopening, a court may exercise jurisdiction to the limited extent of recognizing reliance on an incorrect legal premise, right? And then it cites to a set second circuit case in Mahmoud. And it says where the agency may have declined to exercise as sua sponte authority because it misperceived the legal background remand to the agency for reconsideration in view of the law is appropriate. So again, I think that raise Vargas is is stands for, well, first of all, we have to understand the context of raise Vargas raise Vargas was really one of the first decisions where this court got to apply Kaiser and realize just how profound Kaiser is and how much or how little deference Kaiser affords the agencies when interpreting their own statutes. And I see my time is up. If there's no more questions, I'll resubmit on that. Thank you, counsel. We'll take this matter under advisement.